Good morning. If it please the Court, I'm Jolie Lipsig. I represent Petitioner Appellant Peter Silverbrand, and with me at counsel table is James Thompson, co-counsel. Peter Silverbrand was wrongly convicted because his trial counsel failed to make sure that the jury heard admissions by the actual killer that exculpated his client. Counsel violated a basic precept of competent lawyering. He interviewed a crucial witness, Rodney Smith, without an investigator present and without taking any other steps to preserve the evidentiary value of the interviews. Then, being the sole witness to admissions that exculpated his client, counsel unreasonably decided not to testify to those admissions after getting permission to do so from the trial court. Due to this series of violations, the jury never learned that Rodney Smith admitted to counsel that he had traded vehicles with Mr. Silverbrand on the day of the crime and that Mr. Silverbrand left the area in Smith's camper. The jury never learned that Smith and not Mr. Silverbrand had driven Mr. Silverbrand's van to Loomis on the night of the crime. And the jury never learned that Smith and not Mr. Silverbrand had parked the van in the victim's neighborhood at the precise time of the killing. Under ineffective assent of counsel, the court's supposed to look at the circumstances as they appear to trial counsel at the time he made his decisions in this case. And looking at those circumstances in this case with regard to this particular witness, counsel's performance clearly fell below professional norms. Well, that's not quite how we're reviewing it, is it? This is here under AEDPA, so we're actually looking at whether or not the State appellate court's view of that issue was unreasonable under California Supreme or, excuse me, U.S. Supreme Court law. That's correct, Your Honor. We're not reviewing this case on direct appeal. That's correct. Okay. But the circumstances that the State court considered were not the right ones when it made its decision, and therefore, its decision is an unreasonable application of Strickland to the facts of this case. And we must find that determination to be objectively unreasonable. Yes, that's correct. Which is a pretty high standard. It's a high standard, but in this case, when we have the benefit, as it is, of a State court opinion that puts forth reasons, it's pretty clear to see that their determination was unreasonable. First of all, it made inconsistent findings as to trial counsel's motives or the reasons that prompted counsel to make the first decision, first wrong decision and the most important wrong decision he made in this case, which was to not bring an investigator with him to interview this witness. Well, counsel, are you arguing for the proposition that it is always improper for a lawyer to interview a witness when he has concerns as to whether the witness will even talk to him? Absolutely not. It's not a per se rule. It's supposed to be. I mean, there are circumstances where it would be appropriate, would it not, for the lawyer to interview the witness alone? Yes. You might fear that having a second person there would cause the witness to clam up. That's true. And counsel in this case interviewed Mr. Smith not once, but four times at least, without an investigator present. And certainly the very first interview where he introduced himself to Smith, which was in the San Joaquin County Jail, and he had no idea whether Smith would speak to him, even acknowledge him, that may have been a reasonable decision. But the next thing that happened was months and months later, he received a letter from Smith saying, hey, I understand your case with Silverbrand is going to trial. I want to talk to you regarding Mr. Silverbrand. At that point, his fears about this witness should have been diminished significantly. Second of all, he knew that Mr. Smith might provide crucial information to the very defense that he was planning on mounting. Help me with the record. I understand part of the problem was that counsel didn't memorialize any of these interviews in any kind of a post-interview memorandum. That's correct. Do we ñ is there anywhere in the record where defense counsel goes through the sequence of what he learned from Smith? In other words, I guess what I'm getting at is my experience is in interviewing these kinds of witnesses, they rarely tell you the whole story or even the truthful story the first time, and that it may take some time to get the guy to open up. Is there anything in the record? Oh, yes. There was a full evidentiary hearing on this question in the superior court on the hearing for a new trial motion. And trial counsel testified at length, as did three other witnesses. And I want to mention this now, not to ñ I will come back to your question, but the state court only mentioned two of those witnesses when it was writing its findings in that case, this case. And it failed to really address the chief witness, who was a Strickland expert, who said that counsel's acts in this case were unreasonable. Anyway, to get back to your question, trial counsel testified at length about what happened. And part of the problem with the record is that he can't remember exactly the sequence of events with Smith because he didn't take any notes. He knows he interviewed Smith four times. He says at the second or third interview, probably the second, Smith divulged this exculpatory information to him. So it's pretty clear that Smith told him what he wanted to know by the ñ certainly by the third Folsom prison visit, and counsel saw him again and still didn't bring an investigator to confirm the admissions that were made. The note-taking, failure to take notes is particularly important because that's ñ that factored into counsel's decision not to ultimately testify because he thought he would make a very bad witness, because at a hearing also in the trial court to decide whether he could testify once Smith declared his Fifth Amendment rights not to testify, you know, counsel was cross-examined extensively by the district attorney and essentially convinced he would make a poor witness based on his lack of recall. Some of the other circumstances that made counsel's decision in this case unreasonable were that it was a special circumstance case, so the stakes for his client were extremely high. He knew going in that Smith was willing to talk to him, and that Smith probably had exculpatory information. And also the prosecution case was entirely circumstantial, and in those instances counsel has a heightened obligation because each little error could have the effect of tipping the scales the wrong way. Despite the importance of Smith as an alternative suspect and Smith's apparent willingness to talk to counsel and the weakness of the prosecution case, counsel interviewed Smith alone on a ñ Kennedy. Don't we have a State appellate court finding, or maybe it's the State superior court, that the circumstantial evidence was very strong as to Silverbrand's guilt? The State court did say that, the appellate court did say that, but that's just not the case. And the evidence was that his van was found in the neighborhood of the killing. Well, help me again with the standard of review, then. We have an explicit finding, or maybe it's a conclusion, that the circumstantial case was very strong. Do we give no deference to that and simply review the record de novo and decide for ourselves whether that's so? Well, I think it's sort of a hybrid factual question and ultimate determination of the issues here. And I think in this instance, the Court needs to look at the record to see whether that was a reasonable finding. At a minimum, this Court has to do that. But we would have had to see whether or not it was an objectively unreasonable finding, right? However you phrase it, yes. It's my burden, I think, to show that it's objectively unreasonable. Not simply that we would disagree with it if we were reviewing it on our own. That's true. And the trial record in this case is fairly lengthy. But once you wade through it, and I believe I've made the points about that in my briefs, the evidence, the circumstantial evidence was that Mr. Silverbrand actually committed the crime charged, was not strong at all. The only evidence was of a substantial amount of physical evidence that was seized from his home. That's true. May I address that? Sure. None of the physical evidence, and it gets complicated because there's a number of ballistic experts for the prosecution who testify and a number of other experts. None of it was linked to this crime. It's undisputed that Mr. Silverbrand had an interest in guns. He was interested in gunsmithing. He was interested in silencers and all sorts of things that sort of prejudice us towards him. But not one shred of evidence was affirmatively established to be linked to this particular crime. But wasn't there a directive in the hitman's manual that one of the things you ought to do is file down the silencers or the barrel of the murder weapon so that it makes ballistic matches virtually impossible? Right, but they don't have the murder weapon in this case. None of the guns seized from Mr. Silverbrand, either his house or his vehicle, were linked to this crime. And that's the point. And the hitman, as you know, we argue should not have been admitted in this case for the very reason that you're saying. Mr. Silverbrand, you know, he had this book. That's true. And he had all sorts of other things suggesting he maybe made silencers and shot guns. But there's no evidence that that was used in this particular crime. State appellate court listed some 24, I think that's right, similarities between the hitman's manual and the modus operandi of Mr. Silverbrand and found under the state equivalent to our Federal Rule 404B that that was admissible in order to establish plan, modus operandi, et cetera. What do we do with that state court appellate finding? What's objectively unreasonable about the state court's conclusion that that book was properly admissible into evidence? It's circular. The only way that it's admissible is if there's some piece of evidence linking Mr. Silverbrand to this particular shooting. Well, the fact that there are 24 different points that the court specifically lists in order to bolster the legal conclusion that it is admissible under 404B is a pretty articulable basis for admitting it, isn't it? Yeah, but if you look at those reasons, they're not really specialized. They're not specific. He had maps in his car of areas other than where he lived. Well, so do I, Your Honor. He had used cash when he checked into a motel. He used false names, but he'd been doing that for many, many, many years. And I think we're getting away from the ineffective assistance of counsel claim here and on to the issue of this book, but I don't have to look at prejudice. Let's assume that you're able to get over the first Strickland prong. And for my hypothetical, I'll give you prong one. Doesn't this all go to prejudice, whether or not the error by his counsel would have made any difference if all this other evidence otherwise overwhelmingly convinced the jury that they convicted the right man? Absolutely. And interestingly, in this case, neither the state court nor the district judge even ever addressed prejudice, because they considered counsel's actions to be reasonable. And I think it's we have no state finding that you're bound by on this or need to defer to under 2254. They clearly looked at the admissibility issue, did they not? Of HITMAN, but not on the ineffective assistance of counsel claim. And the book, if the book was so linked to this crime, then I don't think there would have been a lot of discussion about it in the superior court. And the district judge, I mean, the superior court judge at first said he wasn't inclined to admit the book, then he was, then he was only going to admit portions of it. I don't think that that, that HITMAN convicted Mr. Silverbrand, especially if Mr. Smith's admissions had been presented to the jury, because Mr. Smith then would have looked just as culpable as Mr. Silverbrand, because Mr. Smith was the one who didn't use his own vehicle to commit the crime, which was one of the major points in HITMAN. He would have done all of those things that Mr. Silverbrand supposedly did, except that Mr. Silverbrand was in Loomis, I mean, not in Loomis, and was in Visalia at the time of the crime. So it's a bit circular, but I think we have to sort of go through it step by step here. And if the court, if the jury had heard Smith's admissions, then HITMAN would have lost much of its punch here. It would have just been one book out of hundreds and hundreds that Mr. Silverbrand had in his library. What was the argument about why the van was in this particular location? Was there indication that someone else had committed the crime? Or what was the reason for the van being there? Well, Mr. Smith took the van and drove it to the location of the crime before he committed the crime, but the jury never heard that. So the theory would be that Mr. Smith committed the crime, right? Yes, that's true. And he all but admitted that to trial counsel when counsel interviewed him without an investigator present. Did he really admit that or did he just say that he had the van? He gave specific details about having had the van. He never admitted actually committing the crime, but he did tell trial counsel, I know Mr. Silverbrand did not shoot the victim because I had his van and I had driven it to Loomis and parked it in this neighborhood at the time of the crime. Did he ever say why he had parked it there? He told trial counsel a story that counsel didn't believe, which was that he had run out of gas. Counsel testified at several occasions before the superior court outside the presence of the jury that he didn't believe that part of Mr. Smith's testimony, but he believed Mr. Smith was the killer. And I think that's pretty important when you ---- That is what I guess is what I want to ---- that really is never what Mr. Smith said. Mr. Smith just said, I drove the van. He never indicated that he was the killer. No, but he said he drove the van alone and that Mr. Silverbrand wasn't there. And so, no, it's not a confession, but it was a serious admission against penal interest, which the court found, the court allowed him to invoke his Fifth Amendment rights. So it's clear these were inculpatory to Mr. Smith and exculpatory to Mr. Silverbrand. And going back for a minute to the prejudice question, there's this gap in the defense case. The defense theory is exactly what Smith told counsel. In other words, Smith had the van, Mr. Silverbrand left for Visalia, Smith was in the area at the time of the crime. However, there was no evidence presented to the jury to explain then how Mr. Silverbrand's van came to be at the crime scene. There was some other evidence from Mr. Silverbrand himself as to what happened, which, of course, the prosecution made mincemeat of during argument by, you know, saying the jury, you don't need to believe this because where's Mr. Smith? He's a phantom murderer in this case. And there was some testimony from Mr. Silverbrand's mother and a friend of his mother that they had seen Mr. Silverbrand in Visalia on the night of the crime. That was dismissed by the prosecution as self-serving. Smith's admissions, however, you know, they're against his penal interest. They're highly inculpatory of Smith, and they would have just significantly bolstered the defense case. I'd like to reserve a few minutes for rebuttal, if I may. Thank you. Thank you, Ms. Lipsey. Paul O'Connor for L.E. I have a few points I'd like to make about the ineffective counsel issue. Counsel did not render ineffective assistance with regard to Smith Carson. From the initial interview at the San Joaquin County Courthouse, counsel knew that Smith Carson might be reluctant to discuss the case in the company of a third party or if a tape recorder was present. Counsel did not believe that Smith Carson would cooperate with him if his, meaning Smith's counsel, statements could be confirmed by a third party or a tape recorder. Counsel did not want to spook Smith Carson by using a third party or a tape recorder. And I have a few citations to the record that I'd like to mention. First, there's counsel's declaration at Supplemental Excerpts of Record, page 10, where counsel says ---- Assuming that that's his strategy, not to spook the witness by making it look too much like an interrogation. Wouldn't any ordinary intelligent lawyer immediately go and write down his notes of what was said and times and places and persons present and so forth so that he'd have it later if he needed it? Because he's gone to all this strategic avoidance of having a witness present and a tape recording or anything like that. Right. Well, Your Honor, I mean, first of all, I think it's probably true that a lot of defense lawyers and defense investigators have trained themselves just to rely on their memory rather than using written notes, so the written notes don't have to be discovered. And then also ---- It's the FBI that likes to destroy their notes after they take them. All right. Well, anyway, and also ---- Mr. O'Connor, counsel didn't say that that's why he did it. No, no. But, I mean, I think just as an observation, I think that's a fair statement. And also, you know, the state court addressed this issue, and they said that counsel was repeatedly led to believe that Smith-Carson would testify. Smith-Carson had sent a letter to counsel offering to help if he could. At one of the meetings at the Folsom Prison, Smith-Carson indicated he would testify that he had the van on the night of the killing. At one of the Placer County meetings, Smith-Carson was evasive and said he wanted to speak to an attorney, but he indicated he would testify. Well, all these indications that he would testify, depending on how gullible the lawyer was, it's very rare that a person in Folsom is going to actually not ---- is actually going to testify in a case in which he's going to virtually put himself in the defendant's box. Well, Your Honor, actually, one thing counsel was trying to do is, through his series of meetings, he was trying to build Smith-Carson's confidence to where he'd be willing to testify, and specifically, counsel told Smith-Carson it was unlikely that he would be prosecuted, that more likely the prosecutor would argue that Smith-Carson was lying. And I have a few citations for that, excerpts of record 298-301 and also 432-433. And just to get back to a point I wanted to make earlier, the citations for the proposition that counsel did not want to spook Smith-Carson by using a third party or a tape recorder, the first citation I mentioned was supplemental excerpts of record 10, counsel's declaration where he says counsel believed that Smith-Carson would not cooperate if his statements could be confirmed. Also, there's excerpts of record 447, where counsel testifies that use of an investigator would spook Smith-Carson. Also, excerpts of record 449, where counsel testifies that note-taking during the interviews would spook Smith-Carson. And finally, excerpts of record 547, where the trial court in denying the new trial motion notes counsel's fear of spooking Smith-Carson. So, you know, clearly, trial counsel had a rational, tactical basis for not using a third party investigator or a tape recorder. And so when he realized that Smith was not going to testify, then why didn't he arrange the situation so that he could testify? Okay. Well, Your Honor, there are several reasons for that, or I have several responses to that. I think all of which were mentioned by the State court in its analysis. First of all, the selection of witnesses is a matter, a tactical decision for the attorney. Also, counsel believed that Petitioner had performed well as a witness. Also, other evidence supported the defense, notably the KOA campground registration slip, which placed Smith-Carson's vehicle at the campground on the day of the murder. Further, there was counsel's, well, let's see, counsel considered or acknowledged that the value of Smith-Carson's statements might be undermined by counsel having given him detailed information about the crime before Smith-Carson stated what he knew about the events. And I'd just like to offer a few citations on that point. First of all, Excerpts of Record 573, where the State court, the State appellate court says counsel considered that the value of Smith-Carson's statements might be undermined by counsel having given him detailed information beforehand. Now, there's something of a conflict in counsel's testimony on this point, but apparently the State appellate court resolved this conflict in the testimony. They resolved it in support of their finding that counsel gave Smith-Carson information. I'm sorry. I don't understand that rationale. What's the reason for that? Oh, okay. The rationale is that counsel gave Smith-Carson information about the crime, and then what supposedly happened the day of the crime. In other words, it's essentially a suggestion that counsel in effect coached, the witness coached Smith-Carson by giving him all these details about the crime so that Carson could then give a statement exculpating Mr. Silverbrand. So Mr. O'Connor, why would a competent defense lawyer interviewing a hostile witness who he hopes he's going to be able to show was the actual killer want to interview the witness in such a way as to give him key information before he finds out whether the witness has knowledge of that information? Well, it would be so that Smith-Carson could make up a story which comported with the evidence. So it would make it more difficult for the ---- Wouldn't it be better to just ask non-leading, open-ended questions and see what Smith has to say? I mean, the lawyer knows what the evidence of the case is, and he can decide in his own mind as he listens to the witness whether he's lying or not. Right, right. But the problem would be that Smith-Carson was not ---- I mean, this is, of course, my perspective as a representative of the prosecution. I mean, I can't ---- of all the witnesses I ever interviewed, either as a defense lawyer or as a prosecutor, I can't remember one time when I disclosed to the witness that I didn't know what the witness's knowledge was, information that I was trying to get from the witness to see what he or she knew. Right, right. But see, this is ---- the point is that counsel was coaching the witness, that counsel was giving the witness, giving Smith-Carson information that he could use. It would be possible across examination, but I wouldn't think it would be extremely effective. The thing that bothers me is that with no evidence that ---- about Smith, really, that you can depend on, this would seem to be a very crucial element of the defense, and why, if Smith isn't going to testify, why the counsel say, well, you know, I know that he was driving that van and had it there that night. That's much better than a receipt from something about being somewhere. I mean, it seemed to me that when he found out that he couldn't ---- that Smith was not going to be there, that he really should have done something about getting that evidence before the jury. Well, like I say, Your Honor, I mean, there were some reasonable bases for counsel to decline to testify. Okay. Well, tell me the other ones again. Okay. I don't see that first one at all. Sure. Okay. Okay. Well, the selection of witnesses is a tactical decision for the attorney. Petitioner performed well as a witness. There was other evidence. He would have performed well as a witness, would he not? I'm sorry? Is the problem that he wouldn't have been a good witness? Well, yeah. I mean, exactly. In other words, you know, first of all, there was counsel's inability to recall details of meetings with Smith Carson. And also, like I say, I mean, and this is something that the State Appellate Court ---- Well, if he's an effective counsel, I think he would be able to recall the details of that meeting enough so that at least the essential factor is that Smith said that he had the van and it was there that night. Right. Well, that he had the ---- in the general area, anyway. He had the van that night and he was in the general area. Well, like I say, I mean, this is a factor which the State Appellate Court cited in its decision that counsel could be, you know, impeached or that counsel considered that the value of Smith Carson's statements might be undermined by counsel having given him detailed information about the crime beforehand. Okay. We've dealt with that one. What were the other reasons? Okay. Well, selection of witnesses is a tactical decision for the attorney. So in other words, the attorney decides whether or not to call himself, essentially. Petitioner performed well as a witness. There was other evidence supporting the defense. Counsel's inability to recall details of the meetings with Smith Carson would adversely affect his credibility. And also, I think some of the factors that were discussed in counsel's decision not to withdraw from the case are also pertinent here. Counsel decided not to withdraw from the case. And this was reasonable because Smith Carson repeatedly indicated he would testify. Counsel had been involved with the case for about three years. He had a good relationship with Petitioner. Withdrawal would have been a very drastic development. This issue arose near the end of the trial. For example, it was on April 26th of 88 that Petitioner requested that Attorney Blackman remain as his counsel. That was pretty close to the end of the trial. I think the verdict was delivered in May. Also, counsel and Petitioner discussed the matter of whether Attorney Blackman should withdraw. The trial court appointed another attorney to consult with Petitioner on whether counsel should withdraw. When did counsel know that Smith was not going to testify? Well, I think it was during trial, because I think that one or more of the meetings with Smith actually occurred during trial. I think it might have been fairly well along into the trial. Let's see. I'll try to find that quickly. Okay. Well, yeah. I have a sentence here at page 26 of my brief. So, you know, even fairly late into the game, even well into the trial, Smith Carson indicated he was willing to testify. And one other point I'd like to make is that actually, well, a couple other points, actually the State Appellate Court did mention Petitioner's Strickland expert, Attorney Dawson, and that's at excerpts of record 573, 574. And also the findings and recommendations say that there was strong circumstantial evidence of guilt, and that's at excerpts of record 10. So that's a finding by the district court. And I would like to emphasize that, that in this case there was strong circumstantial evidence of Petitioner's guilt. And that means any deficient performance was non-prejudicial. I'd just like to mention a few of the items. I mean, I've listed a large number of the items in my brief. And, of course, also the supplemental excerpts of record that I've submitted include excerpts from the reporter's transcript, which highlight the circumstantial evidence of guilt. They also include statement of facts from the appellant's opening brief from the State Appellate Court, which discussed the evidence in detail. But just to mention a few of the items, I mean, first of all, there was the van that was cited at the crime scene registered to one of Petitioner's aliases. There's also the map, which indicated a route from Interstate 80 to the victim's residence. There was also a note found in Mr. Silverbrand's van, which read, quote, And that can reasonably be interpreted to mean that Petitioner used a Beretta Model 101 with a suppressor, a silencer, to kill Foreman. So those are just three of the many items of circumstantial evidence of Petitioner's guilt. Also, Smith-Carson's statements would have been subject to impeachment. For example, the Gibblers, who were neighbors of the victim, and the Excuse me. I think you're going to want to reach that hitman evidence. And your time is running out. Okay. Looks like I have four minutes left. Okay. Anyway, so the Gibblers, who were neighbors of the victim, and the sheriff's deputies who inspected the van on the night of the murder, they saw only one sleeping bag in the van, which undercut Smith-Carson's statements that he switched vehicles with Silverbrand, because Smith-Carson was, according to Silverbrand's testimony, traveling with his girlfriend. So you'd expect two sleeping bags in the van rather than just one. Also, Silverbrand's explanation for the switch of the vehicles with Smith-Carson was implausible. He said, Silverbrand said, he decided to drive Smith-Carson's camper because it had a slow-leaking tire. You know, in other words, he knew that Smith-Carson's camper had this slow-leaking tire, so because he was such a nice guy, he would drive it all the way back to Visalia, which was some 200 miles away, and let Smith-Carson use his van. Obviously, it would have been easier just to repair the tire, to plug it, to patch it. The testimony was that could have been done for a few dollars. Obviously, that would have been easier than driving the vehicle 200 miles back to Visalia. Now, presumably, Smith-Carson would merely have attempted to corroborate this implausible story, the implausible story about how Silverbrand decided to take Smith-Carson's camper truck because it had a leaking tire. So therefore, counsel's so-called failure to preserve and present Smith-Carson's statements was non-prejudicial. Just to say a few words about the hitman issue. I mean, first of all, of course, Petitioner has a very heavy burden under Estella v. McGuire and under Montana v. Egelhoff. And even under the Ninth Circuit standard, Jamal, there's only a due process violation if no permissible inferences can be drawn from the evidence. And I think the important factor to consider here is that you have to look at all the similarities between hitman and the present offense in their entirety. And, you know, there were 24 similarities cited by the State appellate court. When so viewed, hitman is probative of identity, and in any event, it was reasonable for the State court to make that conclusion. Let's see. I guess just one minor point. Appellate cites McKinney in a Ninth Circuit case. That actually dealt with character evidence. Here the hitman book is probative of identity because of the many similarities between hitman and the present crime. Or, again, it was reasonable for the State court to reach that conclusion. So I think with that, I'm prepared to submit it unless there are questions from the panel. Thank you very much. Okay. Just briefly, first of all, with regard to when counsel learned that Smith was not going to testify, it was a couple of weeks after jury selection began, but I don't believe that there had been any evidence presented. There was plenty of time during the prosecution's case to remedy this situation. And the fact is that counsel should have done something about this as soon as he became the sole recipient of Smith's admissions. He knew at that point that he might have to be a witness. In terms of the ---- I'm sorry. You said two weeks after jury selection had begun? It was during jury selection, I believe. Oh, during jury selection. I believe. I don't believe that the prosecution had begun its case in chief yet. It was absolutely unreasonable for counsel to think that a witness who had contacted him and said, I want to talk, who had in fact made admissions to counsel, and if counsel really thought he was going to testify, it was unreasonable to think this witness would be scared off by the presence of an investigator. Testifying in open court involves lots of witnesses and oaths and all of that that didn't face Mr. Smith while he was being interviewed at the prison with counsel. And so the scaring off, there's no reason why counsel should have believed Smith would have been scared off by an investigator. And on that point, Strickland says that the reasonableness of a strategic decision by counsel is based on the reasonableness of his investigation into an issue. And in this case, counsel basically made an assumption that Smith would be spooked by an investigator without investigating. He never asked Smith, not on the first visit, not on the second visit, not on the third visit. He never said, hey, can I bring an investigator to talk to you? And without doing that, the reasonableness of his decision just falls by the wayside there. That's not something the state court considered at all. Thank you very much, counsel. Case just argued is submitted, and we'll take about a five-minute recess before hearing argument in Cooper v. Lamarck. Thank you. Thank you. Thank you.
judges: Goodwin, Hug, Tallman